PEOPLE v LOWERY

Docket No. 265646. Submitted March 6, 2007, at Detroit. Decided March
20, 2007, at 9:00 a.m.

David Lowery was charged with racketeering, conspiracy to commit
racketeering, and ten counts of delivery of less than 50 grams of
cocaine, all related to allegations that he aided and abetted a series
of cocaine sales in a pub he owned and operated. Following a
preliminary examination, the 23d District Court, William J. Suth-
erland, J., refused to bind the defendant over to the Wayne Circuit
Court for trial on the charges. The Wayne Circuit Court, Leonard
Townsend, J., affirmed. The prosecution appealed by leave
granted.

The Court of Appeals *held*:

The evidence presented and the reasonable inferences arising
from that evidence established probable cause to believe that the
defendant committed each element of racketeering under MCL
750.159i(2), as well as each element of conspiracy to commit
racketeering, and that he aided and abetted the seven counts of
cocaine delivery on which his codefendant was bound over for trial.
Probable cause may be established at a preliminary examination
by circumstantial evidence and reasonable inferences arising from
the evidence. The district court and the circuit court erred by
determining that multiple inferences from the evidence, some-
times referred to as "inferences upon inferences," could not be
used to support binding the defendant over. The district court
abused its discretion by failing to bind the defendant over on the
charges, and the circuit court erroneously affirmed that decision.

Reversed and remanded for reinstatement of charges.

CRIMINAL LAW — PRELIMINARY EXAMINATIONS — PROBABLE CAUSE — EVIDENCE —
MULTIPLE INFERENCES.

Probable cause to believe that a crime was committed and that the
defendant committed it may be established at a preliminary
examination by circumstantial evidence and reasonable inferences
arising from that evidence, including multiple inferences drawn
from the evidence.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Julie A. Powell*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for the defendant.

Before: COOPER, P.J., and CAVANAGH and METER, JJ.

PER CURIAM. The prosecution appeals by leave granted the circuit court's order affirming the district court's refusal to bind defendant over for trial on charges of racketeering, MCL 750.159i, conspiracy to commit racketeering, MCL 750.157a, and ten counts of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*). We reverse and remand this matter for reinstatement of all charges against defendant.

On appeal, the prosecution argues that sufficient evidence was presented at the preliminary examination to require that defendant be bound over for trial on all charges. After review de novo of the circuit court's analysis of the bindover process to determine whether the district court abused its discretion in making its bindover ruling, we agree with the prosecution. See *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996); *People v McBride*, 204 Mich App 678, 681; 516 NW2d 148 (1994).

The purpose of a preliminary examination is to determine whether probable cause exists to believe that a crime was committed and that the defendant committed it. *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003). The prosecution need not establish guilt beyond a reasonable doubt, but must present "evidence sufficient to make a person of ordinary caution and prudence [] conscientiously entertain a reasonable belief of the defendant's guilt." *People v Hill*, 269 Mich

App 505, 514; 715 NW2d 301 (2006). Probable cause may be established by circumstantial evidence and reasonable inferences arising from the evidence. *People v Greene*, 255 Mich App 426, 444; 661 NW2d 616 (2003). If probable cause exists to believe that a felony was committed and that the defendant committed it, the district court must bind the defendant over for trial. MCL 766.13; MCR 6.110(E); *Hill, supra* at 514.

Defendant was charged with racketeering, conspiracy, and cocaine delivery on the theory that he aided and abetted a series of similar cocaine sales accomplished in his pub by his codefendants, Tracy Neal Pitts and Thomas Williams. With respect to the racketeering charge, MCL 750.159i(2) provides: "A person shall not knowingly acquire or maintain an interest in or control of an enterprise or real or personal property used or intended for use in the operation of an enterprise, directly or indirectly, through a pattern of racketeering activity."[1] The Legislature expressly defined the terms "person," "enterprise," and "pattern of racketeering activity" in MCL 750.159f,[2] and set forth the definition

---

[1] On appeal, the prosecution analyzes defendant's culpability for racketeering pursuant to MCL 750.159i(1) and (2), but at the preliminary examination the prosecution argued for defendant's bindover under subsection 2 only; therefore, we will focus on that subsection.

[2] In relevant part, MCL 750.159f provides:

As used in this chapter:

(a) "Enterprise" includes an individual, sole proprietorship, . . . or other legal entity or a group of persons associated in fact although not a legal entity. Enterprise includes illicit as well as licit enterprises.

* * *

(c) "Pattern of racketeering activity" means not less than 2 incidents of racketeering to which all of the following characteristics apply:

of "racketeering" in MCL 750.159g.[3]

Subdividing MCL 750.159i(2) into elements, it appears that the prosecution must establish that (1) a person knowingly acquired or maintained an interest in or control of (a) an enterprise or (b) real or personal property used or intended for use in the operation of an enterprise, directly or indirectly, (2) through a pattern of racketeering activity, which consisted in this case of aiding or abetting the commission of at least two felony

---

(*i*) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.

(*ii*) The incidents amount to or pose a threat of continued criminal activity.

(*iii*) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

(d) "Person" means an individual, sole proprietorship, partnership, cooperative, association, corporation, limited liability company, personal representative, receiver, trustee, assignee, or other legal or illegal entity.

[3] In relevant part, MCL 750.159g defines "racketeering" as follows:

As used in this chapter, "racketeering" means committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving any of the following:

\* \* \*

(c) A felony violation of part 74 or section 17766a of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461 and 333.17766a, concerning controlled substances or androgenic anabolic steroids.

drug crimes that (a) had the same or a substantially similar purpose, result, participant, victim, or method of commission, or otherwise were interrelated by distinguishing characteristics and were not isolated acts, (b) amounted to or posed a threat of continued criminal activity, and (c) were committed for financial gain. See MCL 750.159f; MCL 750.159g; *People v Martin*, 271 Mich App 280, 320-321; 721 NW2d 815 (2006).

In this case, defendant, an individual, qualifies as a "person" as defined by MCL 750.159f(d). Furthermore, the testimony at the preliminary examination indicated that defendant owned and operated Lowery's Pub in the lower level of a building that he rented from Olive Sharpe; thus, defendant maintained an interest in or control of real property.

Next, we consider whether defendant knowingly maintained or controlled the pub when it was used directly or indirectly in the operation of an enterprise. First, we conclude that the preliminary-examination testimony gives rise to a reasonable inference that the pub was used directly in the operation of an enterprise. Pitts and Williams conducted numerous sales of small cocaine packets inside the pub over an extended period. A reasonable inference that Pitts and Williams stored cocaine inside the pub's office arises from undercover police officer Brian Pasienza's testimony (1) that he requested cocaine from Pitts, who initially replied that he had none, but entered the pub office with Williams and returned shortly thereafter in possession of cocaine that he sold to Pasienza and (2) that while inside the office with defendant on December 30, 2003, Williams sold cocaine to a customer who had knocked on the office door. Pam Dishroon also testified that she occasionally purchased drugs from Williams inside the office. To the extent that Pitts and Williams stored

cocaine and sold it together inside the pub, their joint activity falls within the definition of "enterprise" because they operated as an illicit "group of persons associated in fact," even if "not a legal entity." See MCL 750.159f(a).

But defendant must also have *knowingly* maintained an interest in or controlled the pub when it was used in the operation of an enterprise "through a pattern of racketeering activity." MCL 750.159i(2). The following preliminary-examination testimony is relevant to defendant's knowledge and the existence of a pattern of racketeering activity. Dishroon and Hill testified that during the year leading up to February 20, 2004, they had at least monthly purchased packets of cocaine from Williams at the pub, sometimes out in the open at the bar, and that on several of these occasions defendant sat right next to Williams. Pasienza testified that on December 30, 2003, defendant and Williams were inside the closed pub office when a male customer knocked on the door. Defendant answered the door, Williams appeared in the doorway, and the customer gave Williams $50 in exchange for a packet of cocaine before Williams closed the door, leaving himself and defendant again inside the office. On January 9, 2004, as Williams and defendant sat next to each other at the bar, Pasienza observed a customer give the bartender cash, the bartender walk the cash over to Williams, and Williams take the money and openly give the bartender several cocaine packets, which the bartender walked back and handed to the customer. On February 5, 2004, Pasienza saw Pitts and defendant talking near the pub's pool table. Pasienza approached Pitts and gave him $50, in return for which Pitts gave Pasienza a packet of cocaine before Pitts and defendant seated themselves at the bar. On December 12, 2003, December 18, 2003, and January 9, 2004, while defendant sat at the bar or elsewhere

in the pub, Pasienza either purchased or watched an informant purchase packets of cocaine from Pitts, who pulled them out of his shirt pocket, in open view of Pasienza, at least.

Additional testimony supported a reasonable inference that defendant provided his codefendants, Pitts and Williams, access to the pub office as a storage location for cocaine. Dishroon testified that on one occasion, defendant advised her and her husband to enter the office for a surprise, which turned out to consist of two lines of cocaine sitting on the office desk. As mentioned earlier, defendant and Williams entered the pub office on December 30, 2003, and Pasienza observed a cocaine sale take place there, and on February 12, 2004, Pitts denied having cocaine and sold some to Pasienza only after meeting with Williams in the office.

The preliminary-examination testimony agreed that no one ever saw defendant engage in cocaine sales or ever heard him discussing illegal drugs. But the testimony does give rise to reasonable inferences that defendant knowingly controlled the pub for use in the operations of the enterprise, i.e., illegal drug sales. Pasienza's testimony established that at least three cocaine sales that he initiated or witnessed occurred in defendant's immediate presence or near proximity, Pasienza observed other cocaine sales take place near the pub's pool table while defendant sat at the bar, and Dishroon and Hill described how on many occasions they had purchased cocaine from Williams while defendant sat next to him. Although Dishroon and Hill attempted to conceal their transactions, Pasienza stated that while seated at the bar, he could see Pitts in the pool table area, located less than 40 feet away, remove cocaine from his shirt pocket and give it to an

informant. We conclude that the evidence supports a finding of probable cause that defendant had knowledge of the ongoing affairs of the enterprise occurring in the pub. See *People v McGhee*, 268 Mich App 600, 623; 709 NW2d 595 (2005) (observing that "[b]ecause it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required").

We also note that the circuit and district courts erred to the extent they disregarded *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), which explicitly overruled *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974), and held that reasonable inferences may suffice to sustain a conviction provided that established facts support the inferences. *Hardiman* addressed, in the context of a sufficiency challenge, the permissible inferences that may be drawn from evidence, but *Hardiman* did not suggest that a different view of inferences should apply at different stages of the proceedings. And we reject such a notion. The rules of evidence apply to preliminary examinations; therefore, if MRE 401 precludes application of the "inference upon inference" rule in determining a defendant's guilt or innocence, it likewise precludes application of that rule in making probable cause determinations at a preliminary examination. See MCR 6.110(C); MRE 1101; *Hardiman*, *supra* at 428. As the *Hardiman* Court stated, "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* Accordingly, both the district court and the circuit court erred by determining that multiple inferences from the evidence could not support defendant's bindover.

With regard to the final element of the racketeering charge, the existence of a pattern of racketeering activity, the cocaine sales in this case fall within conduct

specifically defined as "racketeering," MCL 750.159g(c), and the testimony indicates that the cocaine sales that occurred inside Lowery's Pub "had the same or substantially similar purpose, result, participant[s], ... or method of commission," and given their ongoing nature the sales reasonably would have "posed a threat of continued criminal activity" had the police not raided the pub. See *Martin, supra* at 321. Because it appears that the cocaine sales occurred jointly with liquor sales, that both cocaine and alcohol use was tolerated at the pub, and that the police raid yielded at least $1,000 in cash in various locations other than the register, the evidence also supports a reasonable inference that the cocaine sales "were committed for financial gain." See *id.*

Regarding the potential knowledge elements required for a racketeering violation under MCL 750.159g, the statute specifically contemplates conviction if a defendant aided or abetted the illegal activity, which was the theory alleged by the prosecution. The testimony discussed earlier concerning defendant allowing ongoing cocaine sales in his pub likewise gives rise to probable cause (1) that the codefendants committed illegal drug sales, (2) that defendant performed acts or gave encouragement that assisted the commission of the illegal drug sales, and (3) that defendant either " 'intended the commission of the crime or had knowledge that the principal intended its commission at the time ... [defendant] gave aid and encouragement.' " *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citations omitted).

In summary, the evidence and the reasonable inferences arising from the evidence establish probable cause to believe that defendant committed each element of racketeering under MCL 750.159i(2).

Turning to the dismissed count of conspiracy to commit racketeering, "in order to bind [a] defendant over on . . . counts of conspiracy there must be probable cause to believe that [the] defendant and the coconspirators shared the specific intent to accomplish the substantive offenses charged." *People v Justice (After Remand)*, 454 Mich 334, 337; 562 NW2d 652 (1997). "The specific intent to combine [to pursue a criminal objective], including knowledge of that intent, must be shared by two or more individuals because 'there can be no conspiracy without a combination of two or more.' " *Id.* at 346 (citation omitted).

> "A person may be a party to a continuing conspiracy by knowingly co-operating to further the objective thereof. It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications. Nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy." [*People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002) (citations omitted).]

"[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Justice, supra* at 347. "What the conspirators actually did in furtherance of the conspiracy is evidence of what they had agreed to do." *Hunter, supra* at 9.

In this case, no direct evidence exists to show that defendant, Pitts, and Williams conspired to engage in racketeering. But the preliminary examination yielded testimony reasonably tending to establish that over an extended period, up to a year, defendant allowed Pitts and Williams to openly conduct sales of cocaine inside his place of business, that defendant permitted Pitts and Williams to store cocaine in the pub office, to which all three codefendants had access, and that defendant

interacted with his codefendants inside the pub at the time of some of their cocaine sales, as well as shortly before and after. This testimony at the preliminary examination gives rise to probable cause to believe that defendant, Pitts, and Williams knowingly agreed to conduct a series of cocaine sales, i.e., "a pattern of racketeering activity," inside Lowery's Pub and that defendant specifically intended to assist in accomplishing the pattern of racketeering activity inside his establishment.

With respect to the multiple counts of delivering less than 50 grams of cocaine on which the district court bound Pitts over, the prosecution explained at the preliminary examination that the charges were premised on defendant's conduct as an aider or abettor. The evidence established that defendant allowed his pub to be the setting for an extended series of cocaine transactions. Defendant was also immediately present or elsewhere in the bar when Pitts sold cocaine packets. We conclude that the evidence, and reasonable inferences arising from the evidence, established probable cause to believe that defendant gave encouragement that assisted the commission of the cocaine deliveries and that defendant either intended the commission of the cocaine sales or had knowledge that the principal, Pitts, intended to sell cocaine in quantities of less than 50 grams at the time that defendant gave aid and encouragement. See *Robinson, supra* at 6.

In conclusion, the record of the preliminary examination reveals that the evidence presented to the magistrate was sufficient to establish, as a matter of law, that all the offenses charged had probably been committed by defendant. See *McBride, supra* at 681. There was evidence of each element of the crimes charged or evidence from which the elements could be inferred. See

*id.* Therefore, the district court abused its discretion when it failed to bind defendant over on all the charges, and the circuit court erroneously affirmed that decision.

Reversed and remanded for reinstatement of the charges against defendant and for further proceedings. We do not retain jurisdiction.