# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMAL DEREK RIVERS,

Defendant-Appellant.

UNPUBLISHED
January 16, 2018

No. 333936
Wayne Circuit Court
LC No. 16-000197-01-FC

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right from his jury trial conviction of involuntary manslaughter, MCL 750.321, for the shooting death of his wife, Kaiya Henderson-Rivers.[1] Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 8 to 15 years in prison. We affirm his conviction but remand for resentencing.

## I. FACTS

On December 19, 2015, Henderson-Rivers was shot in the head during a physical altercation that took place in the basement of defendant's mother-in-law's house. At the time of the shooting, defendant and Henderson-Rivers were living in the basement with Myra Grantham and her two young children, and Grantham and her children were present at the shooting. Defendant and his wife had been engaged in a heated verbal argument which turned physical, and at one point defendant retrieved his gun, and the pair ended up on a bed struggling over the gun. Ultimately, Henderson-Rivers was shot in the head. Grantham testified that, after the gun discharged, defendant stated, "I'm sorry. I love you. I'm sorry. I'm sorry. I never meant to do this." Defendant then told Grantham to call the police, and he took off his sweater and applied it to Henderson-Rivers's gunshot wound. When Grantham was too distraught to tell the 911 operator the address of the house, defendant took the telephone from her and went upstairs to tell the 911 operator the address. Defendant did not return to the basement but went to his cousin's house after unloading the gun and throwing it into a yard. Henderson-Rivers was pronounced

---

[1] The jury acquitted defendant of second-degree murder and voluntary manslaughter.

-1-

dead at the scene after the emergency personnel arrived. Defendant turned himself in to the police the next morning.

## II. ANALYSIS

Defendant first argues that he was denied the effective assistance of counsel because trial counsel did not impeach Grantham at trial with inconsistent preliminary examination testimony. We disagree.

The question whether defense counsel rendered ineffective assistance is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The trial court "must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's findings of fact for clear error. *Trakhtenberg*, 493 Mich at 47. Questions of constitutional law are reviewed de novo. *Id*. Because defendant did not preserve this issue for review by moving for a new trial or an evidentiary hearing on the ground that he was denied the effective assistance of counsel, this Court's review is limited to mistakes apparent from the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-part test set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). "First, [a] defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 600, quoting *Strickland*, 466 US at 687. A defendant "must overcome [a] strong presumption that counsel's assistance constituted sound trial strategy." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017) (citation and quotation marks omitted). "Second, the defendant must show that the deficient performance prejudiced the defense." *Carbin*, 463 Mich at 600, citing *Strickland*, 466 US at 687. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich at 600, citing *Strickland*, 466 US at 694.

At trial, Grantham testified that she saw defendant on top of Henderson-Rivers on the bed, with the gun pointing at Henderson-Rivers. Defendant argues that trial counsel should have impeached this testimony with Grantham's preliminary examination testimony that she did not see the entire altercation because she had turned away to attend to her children, and that she was only guessing at what happened. Defendant contends that such impeachment was crucial to his defense because it would have caused the jury to question the credibility of Grantham's testimony at trial. However, a close review of Grantham's preliminary examination testimony confirms that it was not inconsistent with her trial testimony. For example, Grantham testified consistently at both the preliminary examination and at trial that she did not see everything that occurred during the altercation. Further, Grantham was not specifically asked during the preliminary examination regarding the position of the gun during the altercation. Therefore, Grantham's trial testimony that the gun was pointed at Henderson-River's head was not inconsistent with her preliminary examination testimony. Trial counsel likely recognized this,

and as a matter of trial strategy, declined to question Grantham regarding her testimony at the preliminary examination. Counsel may also have reasonably concluded that it was advisable to not draw further attention to any alleged distinction between Grantham's preliminary examination and trial testimony. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Therefore, defendant has not shown that trial counsel's performance was in any way deficient in declining to impeach Grantham at trial with her preliminary examination testimony. *Carbin*, 463 Mich at 600.

Defendant next argues that he is entitled to resentencing because Offense Variables (OV) 3 and 17 were scored erroneously. In its brief on appeal, the prosecution concedes the scoring errors with regard to both OVs. We agree that OV 3 and OV 17 were scored erroneously where the instant offense did not involve "the operation of a vehicle, vessel, ORV, snowmobile, aircraft, or locomotive." MCL 777.22(1); MCL 777.33(2)(c). Because the scoring errors altered defendant's appropriate minimum sentence guideline range, defendant is entitled to resentencing. *People v Francisco,* 474 Mich 82, 89-91; 711 NW2d 44 (2006).[2]

Next, in a supplemental brief filed in propria persona pursuant to Administrative Order 2004-6, Standard 4, defendant argues that there was insufficient evidence at the preliminary examination to bind over for trial on the second-degree murder charge. We disagree.

A district court's decision to bind over a defendant for trial is reviewed for an abuse of discretion. *People v Herrick*, 277 Mich App 255, 256; 744 NW2d 370 (2007). Similarly, a trial court's decision in response to a motion to quash the information is reviewed for an abuse of discretion. *Id*.

"The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it." *People v Perkins*, 468 Mich 448, 442; 662 NW2d 727 (2003), citing MCR 6.110. "Probable cause may be established by circumstantial evidence and reasonable inferences arising from the evidence." *People v Lowery*, 274 Mich App 684, 686; 736 NW2d 586 (2007). The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "The prosecution is not required to prove that the defendant actually intended to harm or kill[,] . . . [but] must prove the intent to do an act that is in

---

[2] While the prosecution argues that the trial court incorrectly assessed zero points for OV 6, and should have assessed ten points, this issue is not properly before this Court where the prosecution has not filed a cross-appeal. *People v Stout*, 116 Mich App 726, 736; 323 NW2d 532 (1982).

obvious disregard of life-endangering consequences." *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) (citation and quotation marks omitted).

At the preliminary examination, Grantham testified that during a heated argument, defendant walked toward Henderson-Rivers with a gun, and "took the side of the gun and slapped it in there." Grantham testified that she saw defendant on top of Henderson-Rivers on the bed and that Henderson-Rivers "had [defendant] with her hands locked around his wrist." Grantham then heard the gun discharge. There was also evidence at the preliminary examination that during the argument, defendant hit Henderson-Rivers on multiple occasions, walked toward her with a loaded gun while slapping the cylinder of the gun in place, and ultimately struggled with Henderson-Rivers on the bed while holding the gun, while he was on top of her. Put simply, the jury reasonably could have inferred that defendant intended to kill Henderson-Rivers or cause her great bodily harm. *Goecke*, 457 Mich at 464. At a minimum, the evidence showed that defendant had the intent to do an act that was in obvious disregard of life-endangering consequences. *Bergman*, 312 Mich App at 387. Therefore, we are not persuaded that the district court abused its discretion in binding defendant over for trial on the second-degree murder charge or that the trial court abused its discretion in denying his motion to quash the amended information charging second-degree murder.

Finally, defendant argues in his Standard 4 brief that the prosecution knowingly presented perjured testimony at trial. Specifically, defendant argues that Grantham falsely testified at trial that she saw the gun pointed at Henderson-Rivers. Because defendant failed to preserve this issue alleging prosecutorial misconduct for review by objecting at trial, this Court reviews this issue "for plain error affecting defendant's substantial rights." *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016); *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016).

Defendant appears to imply that Grantham's trial testimony must have been false because she did not testify at the preliminary examination that she saw the gun pointed at Henderson-Rivers. However, as noted above, a review of the preliminary examination transcript reflects that Grantham was not specifically asked regarding the position of the gun when Henderson-Rivers and defendant were struggling on the bed. Therefore, there is nothing in the record to support defendant's bare allegations that Grantham's trial testimony was false or that she perjured herself with the prosecution's knowledge. Defendant has not shown a plain error that affected his substantial rights. *Bass*, 317 Mich App at 272; *Norfleet*, 317 Mich App at 661.

## III. CONCLUSION

We affirm defendant's conviction, but remand for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan