*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CRAIG LAQUNITZ TYSON, also known as
CRAIG LAQUINTZ TYSON,

Defendant-Appellant.

UNPUBLISHED
August 11, 2022

No. 352536
Wayne Circuit Court
LC No. 19-004132-01-FC

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions by a jury as a fourth-offense habitual offender, MCL 769.12(1)(a), of manslaughter, MCL 750.321, unlawful driving away a motor vehicle, MCL 750.413, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and second offense possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for manslaughter, 1 to 5 years' imprisonment for unlawful driving away a motor vehicle, 1 to 5 years' imprisonment for felon-in-possession, and 5 years' imprisonment for second offense felony-firearm. The trial court gave defendant 246 days' credit for time served in jail. The trial court ordered defendant to serve his felony-firearm conviction consecutively to his other convictions. We affirm defendant's convictions and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2019, in a house located at 14231 Strathmore, Detroit, Michigan, defendant and his cousin, Raymond Love, sat on a couch arguing until the two stood up from the couch, pushed off of each other, defendant produced a handgun from his pocket and shot Love in the chest. Love exclaimed, "For real," then rushed at defendant and put his hands on the gun which fired again at point-blank range into Love's chest. Defendant fled in a company vehicle parked at the house by a guest, Anthony Crawford, who witnessed the altercation and the first gunshot. Crawford then quickly exited the house but heard the second shot. Love later died from the gunshot wounds to his chest.

-1-

The district court conducted a preliminary examination at which Crawford testified that he saw defendant pull a gun out of his pocket and the weapon discharged causing a round, red hole that oozed out blood from the center of Love's chest. Love stated, "For real?" Crawford then backed away toward the door. As he made it to the door, he saw Love rush defendant and both of them had their hands on the gun struggling. Then Crawford heard a second shot as he tried to exit the door. Once outside, Crawford ran a couple of houses down the street, stopped, and stood until he heard his work truck start. That prompted him to walk to check on the truck, which he saw pull out and proceed down Strathmore. Only Crawford had permission from the truck's owner to drive that truck. The district court found that the evidence established probable cause that crimes were committed and that defendant committed the charged offenses. The court bound defendant over for trial.

At trial, Crawford testified that, on March 1, 2019, he went to a two-story house located at 14231 Strathmore in Detroit, where his daughter, Tara, and Love resided. When he arrived, he entered the house and heard some loud bickering. He saw Love and defendant sitting on a couch bickering loudly. Love and defendant raised their voices and both suddenly jumped up and faced each other. Love went toward defendant and defendant pushed him back toward the end of the couch. Crawford testified that he saw defendant take a black gun out of his pocket and fire it at Love. Crawford saw Love look down at his chest and heard him say, "For real." Crawford explained that he observed the middle of Love's chest and first saw a hole, then around the hole it started to get red. Then Love rushed defendant. Love and defendant went down on the floor between the coffee table and couch and wrestled for the gun. Love had his hand on defendant's hand that held the gun. While Crawford made his way to the door, he heard a second gunshot. Crawford left the house and ran to a vacant lot. Soon after, he saw the company Dodge Ram pickup, fitted with a snowplow that he used for work, drive off down the street. Crawford explained that he had permission from the owner to drive the truck and no one else had permission to do so. Crawford did not know who drove off in the pickup. Crawford then went to Love's Ford F-150 pickup, retrieved his phone from the truck and called 911. He stayed at the location.

Crawford admitted that he had not been truthful to the police when he gave his first statement. He explained that he did not tell the police he went inside the house because he feared the probation repercussions for having contact with the police. He affirmed that he later told the truth to other police officers at a police station.

Dr. Milad Webb, an Associate Wayne County Medical Examiner, testified that he prepared a postmortem report and body diagram of the decedent in this case which consisted of identification of the body, an external examination of the body, an internal examination of the organs, microscopic examination of tissues, and his opinion. He explained that he observed two gunshot wounds to Love's body, both on the front of his chest, one which had occurred at close range and the other from a distance, and injuries to his face. He could not determine which gunshot wound occurred first. Dr. Webb's internal examination revealed the injury paths of the two bullets. He found no medical abnormalities. Based upon the information gathered by the death investigators and his examination and toxicology report, Dr. Webb concluded that multiple gunshot wounds caused Love's death and he certified the manner of death as homicide.

Defendant testified that, on March 1, 2019, he returned from purchasing some alcoholic beverages at 3:00 p.m. to 14231 Strathmore, the house where, for the last five months, he resided

with Love, Crawford, and his and Love's uncle. Defendant stated that he had a close relationship with his cousin, Love. Defendant testified that, around 4:00 p.m., Crawford came into the house and gave Love some cocaine and dropped off a gun and then left. Defendant testified that he sat in the living room which he used as his bedroom, and he and Love argued regarding a family matter raised in text messages a relative sent to Love. Their argument escalated to a physical altercation in which defendant and Love wrestled and pushed each other. Defendant testified that Love next tried to pick up the gun that Crawford left that had been placed underneath a pillow on the couch. Love told defendant "I'll kill you in this mother fucker." Defendant testified that he and Love wrestled over the gun until defendant somehow ended up with the gun, and when Love pushed him, defendant fell back over the couch. Defendant testified, "and as I'm getting back up he went to rush me and I pulled the trigger." Defendant asserted that his mind "was just chaotic, it was I don't know." Defendant testified:

> [Love] rushed me again and while we was tussling, the gun went off again and he was on top of me. Then I rolled him off me and then he like he was trying to breathe, like cuz don't go. So I go outside, [Crawford] across the street and I'm thinking like I'm calling 911. I'm like—I go back into the house, so I go back into the house, I see him stop breathing. After he stopped breathing I left.

Defendant admitted that he fired the gun the first time, but stated that, the second time, the gun discharged while he and Love were wrestling, and he did not know how the gun went off. He denied that he tried to kill his cousin.

After the parties rested their cases, the trial court asked defense counsel if, in light of defendant's testimony, defendant desired any additional jury instructions. Defense counsel responded that the jury should be given a nonstandard instruction regarding momentary innocent possession of a weapon as permitted under *People v Dupree*, 486 Mich 693; 788 NW2d 399 (2010). The trial court asked if defendant sought a manslaughter instruction in light of the fact that he testified that there was an absence of malice at the time of the shooting. Defense counsel answered affirmatively and the prosecution asserted that such additional charge would be appropriate based on the testimony. Defense counsel asked for a moment to consult with defendant and then stated, "At this point in time he does not want the manslaughter instruction." The trial court stated, "I'm bound by the law so I'm going to give the instruction." Defense counsel next requested that the jury be instructed regarding self-defense. The trial court agreed to give a self-defense instruction.

Defendant moved for a directed verdict on the ground that the prosecution failed to prove that defendant acted with premeditation and deliberation. The prosecution opposed the motion. The trial court considered the evidence in a light favorable to the prosecution and found that a rational trier of fact could find that the prosecution proved the elements of the charged offenses beyond a reasonable doubt. The trial court found issues of fact existed for the jury to decide.

Before instructing the jury, the trial court inquired whether the parties had reviewed the revised verdict form to which they each indicated that they had no objections. The trial court instructed the jury regarding the elements of the charged offenses that the prosecution had to prove beyond a reasonable doubt, as well as voluntary manslaughter, self-defense, and possession of a firearm in order to act in self-defense. The court instructed the jury that defendant did not have to

prove that he acted in self-defense, but that the prosecution had to prove beyond a reasonable doubt that defendant did not act in self-defense. After completion of giving the jury its instructions, the trial court asked the parties if they were satisfied with the reading of the instructions. Defense counsel advised the court that he was satisfied on behalf of the defense.

The jury returned from deliberating and advised the court that they had reached a verdict. As to the first-degree murder charge, the jury found defendant guilty of the lesser offense of manslaughter. The jury found defendant guilty of unlawful driving away a motor vehicle, possession of a firearm by a felon, and felony-firearm manslaughter, and felony-firearm.

Defendant moved for judgment notwithstanding the verdict on the ground that the trial court arbitrarily instructed the jury on manslaughter which neither the prosecution nor defense counsel requested and the jury convicted him of that offense. Defendant asserted in his motion that manslaughter is not a lesser included offense of first-degree premeditated murder but in his brief conceded that Michigan law required the trial court to instruct the jury on voluntary manslaughter, the lesser included offense of first-degree murder. Defendant stated that he and his counsel objected to so instructing the jury. Defendant contended that the trial court abused its discretion and infringed upon defendant's rights by instructing the jury on manslaughter over his and counsel's objection and defendant's desire to proceed with an all-or-nothing defense. The prosecution opposed the motion. At the hearing, the trial court recounted defendant's testimony at trial which supported the manslaughter instruction despite defendant's objection. The court noted that it also gave the self-defense instruction that defendant requested. The trial court found no evidence of an irregularity in the trial resulting in prejudice and stated that defendant had a fair and impartial trial. The court, therefore, denied defendant's motion. The trial court then sentenced defendant as previously stated.

Defendant moved for a new trial or alternatively to correct an invalid sentence. He also requested a *Ginther* evidentiary hearing.[1] He asserted that the trial court erred in a number of ways and alternatively that his preliminary examination counsel and his trial counsel provided ineffective assistance in a number of ways. Among other things, defendant argued that the jury's verdict went against the great weight of the evidence requiring a new trial and that his manslaughter sentence shocked the conscience and required resentencing. The prosecution opposed each of the grounds for new trial and resentencing raised by defendant. Following a hearing, the trial court denied defendant's motion for a new trial, denied his motion to correct his sentence, and denied his motion for a *Ginther* hearing. This appeal followed.

In this Court, defendant moved for remand to the lower court to address (1) whether his trial counsel provided ineffective assistance by not introducing evidence of Love's character for aggression or defendant's post-traumatic stress disorder (PTSD) diagnosis, (2) whether defendant should be resentenced because of trial counsel's defective performance related to the habitual offender notice deficiencies and ineffective assistance, and (3) whether trial counsel provided ineffective assistance by not objecting to imposition of enhanced penalty for his felony-firearm conviction. The prosecution opposed defendant's motion. This Court denied without prejudice defendant's motion to remand because defendant failed to persuade the Court of the necessity of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

remand at the time. *People v Tyson*, unpublished order of the Court of Appeals entered September 29, 2021 (Docket No. 352536).

## II. ANALYSIS

### A. INSTRUCTIONAL ERROR OR INEFFECTIVE ASSISTANCE

### 1. MANSLAUGHTER INSTRUCTION

Defendant first argues that his trial counsel provided ineffective assistance by requesting the manslaughter instruction without consulting defendant who desired and intended to present an all-or-nothing murder defense strategy at trial and did not desire that the jury be instructed and permitted to consider convicting him of the lesser offense. Alternatively, defendant contends that the evidence did not support a manslaughter instruction and providing the jury the manslaughter instruction constituted reversible error entitling defendant to a new trial. We disagree.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews the trial court's findings of fact, if any, for clear error, and reviews de novo its conclusions of law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. This Court also reviews de novo constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003). Although defendant preserved the issue, where, as here, no evidentiary hearing has been held, this Court's review is limited to mistakes apparent on the trial court record. See *People v Seals*, 285 Mich App 1, 17, 19-20; 776 NW2d 314 (2009), lv den 498 Mich 948 (2015).

This Court reviews a claim of instructional error involving a question of law de novo, but reviews the trial court's determination that a jury instruction applied to the facts of the case for an abuse of discretion. *People v Everett*, 318 Mich App 511, 528; 899 NW2d 94 (2017). A trial court abuses its discretion when the outcome is not within the range of reasonable and principled outcomes. *Id*. at 516. In *Everett*, this Court explained:

> Even when instructional error occurs, reversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. The defendant bears the burden of establishing that the error undermined the reliability of the verdict. [*Id*. at 528-529 (quotation marks and citations omitted).]

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks and citation omitted). To prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2021) (citations omitted). "In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient

-5-

performance, a different result would have been reasonably probable." *Id*. at 55-56 (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Defendant must overcome a strong presumption that trial counsel provided effective assistance. *Seals*, 285 Mich App at 17. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted). Trial counsel has "wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). This Court has recognized that trial counsel's decision to seek or not seek a lesser included offense instruction is a matter of trial strategy. See *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Presenting an all-or-nothing defense has been recognized in some circumstances as a legitimate trial strategy and not necessarily ineffective assistance of counsel. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982).

In *Everett*, this Court considered whether the trial court erred by failing to instruct the jury on a lesser included offense. This Court explained:

> It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law. Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense. A requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. Failure to instruct on a lesser included offense undermines reliability in the verdict only when the evidence clearly supports the lesser included instruction, but the instruction is not given. In analyzing whether the evidence "clearly" supports the instruction, we must consider the "entire cause," including evidence that has been offered to support the greater offense. [*Everett*, 318 Mich App at 529 (quotation marks, alteration, and citations omitted).]

"[W]hen a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003) (citation omitted). "[M]anslaughter is a *necessarily* included lesser offense of murder." *Id*. at 544; *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006). To prove that defendant committed voluntary manslaughter, the prosecution must show "that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009) (citation omitted). In *People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005) (quotation marks and citation omitted), this Court held that "[t]he degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id*. at 715 (citation and quotation marks omitted). "A defendant properly convicted of voluntary manslaughter is a person who acted out of a temporary

-6-

excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder." *People v Townes*, 391 Mich 578, 590; 218 NW2d 136 (1974).[2]

The record in this case indicates that, when asked by the trial court whether the parties desired the court to instruct the jury on manslaughter, defendant's trial counsel immediately responded affirmatively, apparently before consulting with his client regarding defendant's intention in that regard. Defendant promptly informed his trial counsel of his desire to not have the court instruct the jury on manslaughter and defense counsel immediately posed an objection to so instructing the jury. Defendant argues that his trial counsel deprived him of effective assistance entitling him to a new trial. Defendant's ineffective assistance argument in this regard lacks merit.[3]

Consultation with one's attorney at critical stages in criminal proceedings is a defendant's right. See generally, *People v Hieu Van Hoang*, 328 Mich App 45, 59; 935 NW2d 396 (2019). In *People v Frazier*, 478 Mich 231, 246; 733 NW2d 713 (2007), while reflecting upon *Roe v Flores-Ortega*, 528 US 470, 478; 120 S Ct 1029; 145 L Ed 2d 985 (2000), our Supreme Court noted that the United States Supreme Court "stated that when an attorney consults with his client about the consequences of his client's decision, the attorney's performance can be considered deficient under the first prong of *Strickland* [*v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)] only if the attorney fails to follow his client's express instructions."

In this case, without consulting defendant, defense counsel gave assent to the manslaughter instruction; but after consulting with defendant, promptly informed the trial court that defendant objected to such jury instruction. Because defendant's trial counsel neglected to first consult with defendant regarding instructing the jury on the lesser included offense of voluntary manslaughter, we conclude that defense counsel performed below an objective standard of reasonableness by not consulting his client first before speaking. In addition to establishing the first element of his ineffective assistance claim, however, he nevertheless must prove that, but for defense counsel's defective performance, "there is a reasonable probability that the outcome would have been

---

[2] Involuntary manslaughter encompasses all homicides that do not constitute murder, voluntary manslaughter, or a justified or excused homicide. *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018).

[3] Defendant also argues tangentially that defense counsel's request for the manslaughter instruction provided him no benefit because conviction of voluntary manslaughter carried a mandatory 25-year sentence under MCL 769.12. The "no benefit" argument hinges on defendant's speculative assumption that the jury would have completely acquitted him of the murder charges. Defendant disregards the fact that his charge of first-degree murder carried a statutory life without parole penalty under MCL 750.316(1)(a), and his charge of second-degree murder carried a statutory life or term of years (at the discretion of the court) penalty under MCL 750.317. Both such potential penalties exceeded the statutory minimum sentence for voluntary manslaughter. Contrary to defendant's argument, trial counsel's request for the instruction actually served defendant's best interests because it gave the jury an option to convict defendant on a lesser charge that carried a significantly lesser penalty.

different." *Trakhtenberg*, 493 Mich at 55-56 (quotation marks and citations omitted). He has failed and cannot do so.

First, the record indicates that the trial court considered the evidence adduced at trial and concluded that it must instruct the jury on the included lesser offense of voluntary manslaughter. The trial court's inquiry to the parties appears to have been made less for the purpose of discussion than to enable objection before the court announced its decision that a rational view of the evidence supported so instructing the jury. After defendant's objection, the trial court stated without delay that it concluded that the law required that the court so instruct the jury and entertained no further discussion on the issue. Trial courts have discretionary authority to determine the instructions to be given the jury. A voluntary manslaughter instruction must be given when a defendant, as here, has been charged and tried for murder if supported by a rational view of the evidence. *Mendoza*, 468 Mich at 541. The trial court, therefore, properly determined the applicable jury instructions in this case.

Second, as the prosecution pointed out to the trial court in opposition to defendant's motion for new trial, that regardless of defendant's position and objection, the prosecution would have requested the manslaughter instruction because the evidence supported providing it to the jury. Thus, if defense counsel would have consulted defendant and objected to giving the instruction, the outcome, i.e., the giving of the instruction, would not have differed. Accordingly, defendant cannot establish that, but for his counsel's defective performance, the instruction would not have been given.

Defendant contends that the jury would have acquitted him of the murder charges absent the manslaughter instruction. The record, however, does not support such conclusory contention which appears to be founded solely on his speculation. It is unclear that the jury would have acquitted defendant of murder since it obviously rejected defendant's self-defense claim. Further, defendant admitted possessing the gun and fatally shooting Love. Even if the jury acquitted defendant of first-degree murder, it could have found him guilty beyond a reasonable doubt of second-degree murder.

Defendant also argues that, even if his ineffective assistance claim fails, the trial court erred by giving the manslaughter instruction. We disagree.

To prove that defendant committed voluntary manslaughter, evidence had to establish "that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *Roper*, 286 Mich App at 87. In this case, Crawford testified that defendant and Love engaged in an argument that escalated to the point where defendant and Love rose from the couch and physically accosted each other, whereupon defendant took a handgun out of his pocket and shot Love in the chest. Crawford also testified that, as he personally began exiting the room, he saw Love rush defendant and wrestle with defendant for the gun. Crawford testified that he did not see, but heard, the second gunshot.

Defendant testified similarly to the building tension and rising passion as he and Love argued, then rose and engaged in a physical altercation. Defendant admitted that he came to possess the gun which he pointed and discharged at Love after breaking away from Love so that

he and Love were physically separated. Defendant also admitted that, after he shot Love, Love rushed defendant and the two men engaged in further wrestling for the gun until the gun again discharged while in defendant's possession, striking Love. Dr. Webb testified that two gunshots to Love's chest caused Love's death. A rational view of the evidence presented at trial supported the trial court's decision to instruct the jury on voluntary manslaughter. From this evidence, reasonable jurors could conclude beyond a reasonable doubt that (1) defendant killed Love in the heat of passion, (2) defendant's passion had been adequately caused by provocation of the men's argument and physical altercation, and (3) no lapse of time enabled defendant to control his passions. Accordingly, we hold that the trial court did not err by giving the manslaughter instruction.

## 2. SELF-DEFENSE INSTRUCTION OR INEFFECTIVE ASSISTANCE

Defendant also argues that the trial court erred by not instructing the jury that self-defense served as a defense to second-degree murder and manslaughter, and alternatively that defense counsel provided him ineffective assistance by not objecting and failing to request that the court instruct the jury that self-defense applied to those charges. Defendant did not object to the jury instructions as given. In fact, defense counsel advised the court that he was satisfied on behalf of the defense with the jury instructions. When a party expresses satisfaction with the instructions as given to the jury, the party has waived any claim of error respecting the instructions. *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017). Such waiver extinguishes any error and precludes appellate review. *People v Carter*, 462 Mich 206, 215, 219; 612 NW2d 144 (2000).

However, we will consider this claim of error in the context of addressing defendant's claim that defense counsel provided ineffective assistance for not requesting additional instructions regarding self-defense. To prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Carbin*, 463 Mich at 600 (quotation marks and citation omitted).

Defendant argues that the trial court's instructions regarding self-defense indicated to the jury that the defense only applied to the first-degree murder charge and not to the lesser offenses of second-degree murder or voluntary manslaughter. The record reflects that the trial court instructed the jury regarding the elements of first-degree premeditated murder and then instructed that the jury could also consider the lesser offenses of second-degree murder and voluntary manslaughter and instructed the jury as to the elements of those lesser offenses. The trial court also instructed the jury on the other charged offenses and their respective elements. The trial court then gave the following self-defense instructions:

> The Defendant claims that he possessed the firearm in order to act in lawful self-defense. A person may possess a firearm to defend himself under certain circumstances even where it would otherwise be unlawful for him to possess the firearm. If a person possesses a firearm to act in lawful self-defense his actions are excused and he is not guilty of being a felon in possession of a firearm.

Just as when considering the claim of self-defense to the charge of homicide you should consider all the evidence and use the following rules to decide whether the Defendant possessed a firearm to act in lawful self-defense. You should judge the Defendant's conduct according to how the circumstances appeared to him at the time he acted.

First, when he acted the Defendant must have honestly and reasonably believed that he had to possess a firearm to protect himself from imminent unlawful use of force by another. If his belief was honest and reasonable he could act to defend himself with a firearm even if it turns out later that he was wrong about how much danger he was in.

Second, a person is only justified in possessing a firearm when necessary at the time to protect himself from danger of death or serious injury. The Defendant may only possess a firearm if it is appropriate to the attack made and the circumstances as he saw them.

When you decide whether the possession of the firearm was what seemed necessary you should consider whether the Defendant knew about any other ways of protecting himself. But you may also consider how the excitement of the moment affected the choice the Defendant made.

Third, at the time he possessed the firearm the Defendant must have [sic]-must not have been engaged in a criminal act that would tend to provoke a person to try to defend himself from the Defendant.

An individual who has not or is not engaged in the commission of a crime at the time he uses deadly force, may use deadly force against another individual anywhere he has the right to be, with no duty to retreat, if either of the following applies. The individual honestly and reasonably believes that the use of deadly force is necessary to prevent imminent death of or imminent great bodily harm to himself or to another individual. The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or another individual.

An individual who has not or is not engaged in the commission of a crime at the time he used force other than deadly force may be used [sic]-may use force other than deadly force against another individual anywhere he has the right to be, with no duty to retreat, if he honestly and reasonably believes that the use of force is necessary to defend himself or another individual from imminent unlawful use of force by another individual.

The Defendant claims that he acted in lawful self-defense. A person may act [sic]-a person has the right to use force or even take a life to defend himself under certain circumstances. If a person acts in lawful self-defense, that person's actions are justified and he is not guilty of homicide murder first degree premeditated.

-10-

You should consider all the evidence and use the following rules to decide whether Defendant acted in lawful self-defense. Remember to judge the Defendant's conduct according to how the circumstances appeared to him at the time he acted.

First, at the time he acted the Defendant must have honestly and reasonably believed he was in danger of being killed or seriously injured. If the Defendant's belief was honest and reasonable he could act immediately to defend himself even if it turned out later that he was wrong about how much danger he was in. In deciding if the Defendant's belief was honest and reasonable you should consider all the circumstances as they appeared to the Defendant at the time.

Second, a person may not kill or seriously injure another person just to protect himself against what seems like a threat of only minor injury. The Defendant must have been afraid of death or serious physical injury. When you decide if the Defendant was afraid of one or more of these, you should consider all of the circumstances: the condition of the people involved, including their relative strength or whether the other person was armed with a dangerous weapon or had some other means of injuring the Defendant or the nature of the other person's attack or threat or whether the Defendant knew about any previous violent acts or threats made by the other person.

\* \* \*

All right. Third, at the time he acted the Defendant must have honestly or reasonably believed that what he did was immediately necessary. Under the law a person may only use as much force as he thinks is necessary at the time to protect himself. When you decide whether the amount of force used seemed to be necessary, you may consider whether the Defendant knew about any other ways of protecting himself. But you may also consider how the excitement of the moment affected the choice the Defendant made.

The Defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the Defendant did not act in self-defense.

As defendant points out, the trial court stated, "If a person acts in lawful self-defense, that person's actions are justified and he is not guilty of homicide murder first degree premeditated" but the court did not separately state further that the self-defense instruction applied to the included lesser offenses of second-degree murder or voluntary manslaughter. The trial court's instructions, nevertheless, informed the jury that if defendant acted out of a reasonable belief that the circumstances necessitated use of deadly force, defendant could kill another person to protect himself. Taken as a whole, the self-defense instructions cannot be reasonably understood to state that they applied only to the first-degree premeditated murder charge as defendant contends. "The instructions must not be extracted piecemeal to establish error." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001) (quotation marks and citation omitted). Further, "[e]ven if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the

issues to be tried and sufficiently protected the defendant's rights." *Id*. (citation omitted). Considering this in the context of defendant's claim of ineffective assistance, we do not conclude that defendant has established that his counsel's failure to object and seek additional instructions fell below an objective standard of reasonableness.

Even assuming that defense counsel should have objected and requested clarification that the self-defense instructions applied to the lesser offenses, we are not persuaded that, but for counsel's deficient performance, the outcome of defendant's trial would have been different. The record indicates that defendant testified that he acted in self-defense, that he believed himself in imminent danger and shot the victim to protect himself. During closing argument defense counsel directed the jury's attention to the evidence and argued that the evidence established that defendant feared for his life and took possession of the gun and used it to protect himself. The jury considered the evidence and concluded that the prosecution proved that defendant did not act in self-defense. The jury, however, concluded that the prosecution failed to prove beyond a reasonable doubt that defendant committed either first-degree or second-degree murder. The jury found that defendant committed voluntary manslaughter, felony-firearm, and felon-in-possession. Defendant has failed to establish that, had defense counsel objected and requested additional instruction regarding self-defense, the jury would have found that he acted in self-defense and acquitted him of all charges. Accordingly, his ineffective assistance of counsel claim in this regard fails and he is not entitled to relief.

## B. INEFFECTIVE ASSISTANCE DURING PRELIMINARY EXAMINATION

Defendant next argues that during the preliminary examination his counsel provided him ineffective assistance by going forward with the proceeding without all of the statements Crawford made to the police, which he contends prevented defense counsel from effectively cross-examining and impeaching him with his conflicting statements to the police, and had his counsel done so he would not have been bound over for trial on the charged offenses. We disagree.

"The purpose of a preliminary examination is to determine whether probable cause exists to believe that a crime was committed and that the defendant committed it." *People v Lowery*, 274 Mich App 684, 685; 736 NW2d 586 (2007). Accordingly, the prosecutor need not demonstrate guilt beyond a reasonable doubt at the preliminary examination stage. *Id*. Probable cause is established if "a person of ordinary caution and prudence [could] conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. (quotation marks and citation omitted).

In *People v Taylor*, 316 Mich App 52, 55; 890 NW2d 891 (2016) (citation omitted), this Court recently explained:

> Once a criminal case has been bound over and jurisdiction has been vested in the circuit court, there are only limited circumstances in which the circuit court may properly remand the case for a new or continued preliminary examination. If a motion to quash is filed and the circuit court determines that the evidence is insufficient to support the bindover, the circuit court is permitted to remand the case for a further examination at which the prosecutor may seek to remedy the shortcoming in the proofs needed to establish probable cause.

In this case, following the preliminary examination, the district court bound over defendant for trial on the charged offenses. Defendant later moved to quash the bindover on the ground that the evidence presented at the preliminary examination failed to establish premeditation and deliberation. Not until after his trial, did defendant raise the issue of ineffective assistance related to his preliminary examination counsel's cross-examination of Crawford. The presentation of sufficient evidence to convict at trial, however, renders any erroneous bindover decision harmless. *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). The record reflects that the prosecution presented sufficient evidence to convict defendant of the charged offenses and the jury determined that the evidence established beyond a reasonable doubt that defendant committed voluntary manslaughter. Even if defendant's preliminary examination counsel performed deficiently as alleged, and as a result the district court erroneously bound defendant over for trial on the charged offenses, under *Libbett*, the alleged erroneous bindover decision was harmless.

Respecting defendant's claim that his counsel performed deficiently at the preliminary examination, analysis of the transcript of that proceeding does not fully support his claim of ineffective assistance in this regard. The record reflects that, on cross-examination, Crawford testified that he made more than one statement to the police. Defendant's counsel used that admission to challenge Crawford's credibility, and the record indicates that counsel recognized that Crawford's preliminary examination testimony varied from his original statement to the police. Although Crawford denied that he told the police that he did not see the shooting and attempted to bolster his preliminary examination testimony by claiming it was truthful, defense counsel made clear on the record that Crawford's testimony varied from his statements to the police, and challenged its reliability. It is unclear from the record the extent to which defense counsel lacked preparedness to cross-examine Crawford. Further, even if one assumes that defense counsel lacked sufficient preparation to more effectively cross-examine Crawford at the preliminary examination, and his performance thereby fell below an objective standard of reasonableness, defendant has failed to establish that, but for his preliminary examination counsel's defective performance, the outcome of the proceedings would have been different. If counsel had all of Crawford's statements to the police, and cross-examined him during the preliminary examination, at most it may have revealed some variation in Crawford's statements, but likely would not have seriously undermined his testimony on which the district court determined its bindover decision. Defendant, therefore, cannot establish the second element of his ineffective assistance claim.

Moreover, at defendant's trial, defense counsel had all discovery materials and used Crawford's statements to the police plus his 911 call statements during cross-examination to impeach Crawford's trial testimony. Trial counsel presented the jury the full scope of the variation in Crawford's statements. Nevertheless, the jury convicted defendant. Thus, even if his preliminary examination counsel had been armed with all of the discovery and cross-examined Crawford with it, such would have made no difference in the district court's bindover decision. Crawford's preliminary examination testimony sufficed to establish probable cause to bind over defendant on the charged offenses. Accordingly, defendant cannot establish the second element of this ineffective assistance claim.

Defendant has failed to establish that his preliminary examination counsel performed deficiently, and even if his performance fell below an objective standard of reasonableness, defendant cannot establish that, but for his counsel's performance, the outcome of the proceedings

would have been different. Moreover, defendant's trial counsel had all of Crawford's statements and the 911 call information and effectively cross-examined him with it, but the prosecution presented sufficient evidence to convict at trial which rendered any erroneous bindover decision harmless.

## C.  INEFFECTIVE ASSISTANCE FOR NOT ELICITING TESTIMONY OF LOVE'S CHARACTER AND DEFENDANT'S MENTAL DISORDER

Defendant argues that his trial counsel provided ineffective assistance by not eliciting testimony regarding Love's character for aggression and his own PTSD. We disagree.

Defendant's claim that his counsel provided ineffective assistance by not questioning defendant regarding his purported PTSD diagnosis lacks merit because nothing in the lower court record even remotely supports his claimed diagnosis. His presentence investigation report (PSIR) indicates that he reported being previously diagnosed with depression and PTSD, but defendant has presented no documentation of an actual clinical diagnosis of PTSD. Defendant submitted his affidavit as an exhibit to his appeal brief in which he stated that he told his trial counsel that his PTSD diagnosis would support his self-defense claim but that discussion went no further. Notably absent in defendant's affidavit are any facts establishing when he received such diagnosis, who rendered the diagnosis, or reference to any clinical documentation that might corroborate his assertion. Neither the trial court nor this Court has been presented any evidence of such diagnosis.

Moreover, analysis of defendant's trial testimony indicates that defense counsel gave defendant ample opportunity to testify regarding his state of mind during the altercation, his response to Love's conduct, and his own actions and motivations. Although given the opportunity to answer the open-ended questions posed by defense counsel, defendant chose or neglected to testify regarding his purported PTSD diagnosis or the effect that having such mental disorder had on his conduct during the incident. We cannot reasonably conclude that defense counsel performed deficiently by not specifically directing defendant to testify in this regard. We cannot second-guess matters of trial strategy, nor assess counsel's competence with the benefit of hindsight. *Russell*, 297 Mich App at 716.

Even if we were to conclude that defense counsel's performance fell below the applicable standard, defendant cannot establish that but for counsel's deficient performance the outcome of his trial would have been different. The prosecution presented evidence that negated defendant's claim of self-defense. Defendant's own testimony critically undermined his self-defense claim. It is not reasonably likely that had defendant testified regarding PTSD that the jury would have ignored defendant's admissions to possession of the handgun, however obtained, his pointing and firing it at Love when they separated, then again discharging the handgun at point-blank range resulting in Love's death from his chest wounds. Accordingly, defendant's claim of ineffective assistance in this regard lacks merit.

Respecting defendant's claim that his counsel provided ineffective assistance by failing to elicit testimony regarding Love's character for anger and aggression, close analysis of the record again defeats this claim. The evidence adduced at trial indicates that the victim's character was not an essential element of defendant's self-defense claim.

-14-

Evidence concerning the aggressive character of a homicide victim, even if the defendant was unaware of it at the time, is admissible in furtherance of a self-defense claim to prove that the victim was the probable aggressor. MRE 404(a)(2); *People v Harris*, 458 Mich 310, 315-316; 583 NW2d 680 (1998). However, this type of character evidence may only be admitted in the form of reputation testimony, not by testimony regarding specific instances of conduct unless the testimony regarding those instances is independently admissible for some other reason or where character is an essential element of a claim or defense. MRE 405; *Harris*, 458 Mich at 318-319.

The record reflects that other witnesses who testified remarked that defendant and Love argued on occasion, but the witnesses reported no major character flaws or mental health issues in either person. Nevertheless, such testimony opened the door to inquiries regarding Love's character. During defendant's examination by defense counsel, defendant had ample opportunity to testify regarding Love's character. Defendant, however, testified that he and Love were very close and he had never had a physical fight with Love despite arguing and yelling at each other. When asked directly if he had seen Love angry before with other individuals, defendant answered affirmatively but did not expound. When asked if he had ever seen Love with a gun before, defendant again answered affirmatively but did not expound. Even during cross-examination by the prosecution, defendant had opportunity to testify regarding Love's character. He did not. Defense counsel cannot be held to have performed defectively under the circumstances. We cannot second-guess counsel in matters of trial strategy or assess counsel's competence with the benefit of hindsight. *Russell*, 297 Mich App at 716.

Even if we conclude that defense counsel's performance fell below the applicable standard, defendant cannot establish that but for counsel's deficient performance the outcome of his trial would have been different. The prosecution presented evidence that negated defendant's claim of self-defense. Defendant's own testimony critically undermined his self-defense claim. It is not reasonably likely that, had defendant testified regarding Love's character, the jury would have ignored defendant's admissions and the evidence that defeated his self-defense claim. Accordingly, defendant's claim of ineffective assistance in this regard lacks merit.

## D. VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

Defendant also contends that the jury's verdict went against the great weight of the evidence. We disagree.

We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review a great-weight challenge by deciding whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011) (quotation marks and citation omitted).

A new trial may be granted, on some or all of the issues, if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e); MCR 6.431(B). The jury's verdict should not be set aside, however, if there is competent evidence to support it. *People v Schwartz*, 215 Mich 197,

208-209; 183 NW 723 (1921). Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993). "[W]hen testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the [finder of fact]." *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998) (quotation marks and citations omitted).

In *People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009) (quotation marks and citations omitted) this Court explained:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury.

"Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial. Absent exceptional circumstances, issues of witness credibility are for the trier of fact." *Unger*, 278 Mich App at 232 (citation omitted). On appeal, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

In this case, the record reflects that the prosecution presented evidence from which reasonable jurors could find beyond a reasonable doubt that defendant committed each element of voluntary manslaughter, as well as the other charged offenses. Although the defense presented some evidence to impeach Crawford's testimony and challenged his credibility by exposing inconsistencies in his statements to the police with his trial testimony, close analysis of that evidence indicates that it did not serve as destructive cross-examination because it exposed only some discrepancies but not on key facts that were corroborated by defendant's own testimony and Dr. Webb's testimony. Defendant's description of the incident substantially correlated to Crawford's description. Significantly, defendant's admissions that he possessed the handgun, and when he and Love separated he pointed the gun and shot Love, then again shot Love at point-blank range, independently supported the jury's verdict. "A trier of fact can infer a defendant's intent from his words, acts, means, or the manner used to commit the offense." *People v Harrison*, 283 Mich App 374, 382; 768 NW2d 98 (2009). "Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

Viewing the evidence in this case in the light most favorable to the prosecution, rational triers of fact could find that defendant committed the charged offenses and specifically voluntary manslaughter. The jury ultimately made the necessary credibility decisions and decided the truth of what transpired during the incident. They found that the evidence did not support defendant's

-16-

claim of self-defense. Therefore, the verdict was not contrary to the great weight of the evidence. Accordingly, the trial court did not err by denying defendant's motion for a new trial. The great weight of the evidence supported the jury's verdict.

## E. HABITUAL NOTICE DEFECT OR INEFFECTIVE ASSISTANCE

Defendant claims that the prosecution served a defective fourth-offense habitual offender notice which renders the imposition of the statutory mandatory minimum sentence of 25 years' imprisonment for his voluntary manslaughter conviction invalid entitling him to resentencing. Alternatively, defendant argues that he is entitled to resentencing because his trial counsel failed to raise this objection during defendant's sentencing. We disagree.

This Court reviews de novo a trial court's statutory interpretation, and for an abuse of discretion its sentencing decisions. *Babcock*, 469 Mich at 253. This Court reviews a trial court's denial of a motion for resentencing for an abuse of discretion. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *Armstrong*, 490 Mich at 289. Although defendant preserved the issue, where, as here, no evidentiary hearing has been held, this Court's review is limited to mistakes apparent on the trial court record. *Seals*, 285 Mich App at 17.

"Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). MCL 769.12 statutorily mandates enhanced punishment for persons who are convicted of a fourth felony following three or more felony convictions. Under MCL 769.13(1), if the prosecution intends to seek the penalty enhancement under MCL 769.12(1)(a), the prosecution must file "a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." The notice must list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. MCL 769.13(2). MCL 769.12 provides in relevant part:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

* * *

-17-

(6) As used in this section:

(a) "Listed prior felony" means a violation or attempted violation of any of the following:

\* \* \*

(*iii*) . . . MCL 750.227[4] . . . .

(*iv*) A second or subsequent violation or attempted violation of section 227b of the Michigan penal code, 1931 PA 328, MCL 750.227b[5].

\* \* \*

(c) "Serious crime" means an offense against a person in violation of . . . MCL . . . 750.321[6] . . . .

Defendant does not contend that the prosecution failed to provide him the habitual offender notice. Defendant challenges the notice's validity on the ground that it did not restrict its list to only four felonies, and more particularly because it identified two felony convictions in 2005 that arose out of the same criminal transaction. The prosecution argues that it complied with MCL 769.12 and 13's notice requirements, and counters that the statutory scheme does not limit the number of felonies the prosecution may list, but restricts the sentencing court from consideration of more than one felony that arose from the same criminal transaction. The prosecution's argument has merit and defendant's does not.

The record reflects that the prosecution filed a felony information on April 12, 2019, that gave fourth-offender notice identifying five previous felony convictions, and later filed a habitual offender notice that referenced the previously filed felony information. The prosecution also filed a felony complaint on April 15, 2019, that gave defendant notice of the charges against him and also gave a fourth-offense habitual offender notice. Later, the prosecution filed an amended felony information on July 30, 2019, that again gave fourth-offense habitual offender notice. The two felony information forms and the felony complaint listed defendant's five previous felony convictions: (1) 2001, malicious destruction of fire/police property in violation of MCL 750.377b; (2) 2005, felon in possession of a firearm in violation of MCL 750.227b; (3) 2005, carrying a

---

[4] MCL 750.227 prohibits a person from carrying a concealed weapon and violation of the statute constitutes a felony punishable by imprisonment for not more than 5 years.

[5] MCL 750.227b prohibits a person from carrying or possessing a firearm during the commission or attempted commission of a felony and a person who violates the statute is guilty of a felony and shall be punished by imprisonment for 2 years, and if convicted of a second offense, the person shall be punished by imprisonment for 5 years, and conviction of three or more such offenses requires that the person shall be punished by imprisonment for 10 years.

[6] MCL 705.321 provides that manslaughter is a felony punishable by imprisonment of not more than 15 years.

concealed weapon in violation of MCL 750.227; (4) 2008, resisting and obstructing a police officer in violation of MCL 750.81d(1); and (5) 2011, receiving and concealing stolen property a motor vehicle in violation of MCL 750.535(7). The notices and the complaint stated the 25-year minimum mandatory sentence that would result under MCL 769.12.

The prosecution's notice of intent to seek a fourth-offense habitual offender mandatory minimum sentence met the requirements of MCL 769.12 by identifying three or more felony convictions, with at least one of which identified a listed prior felony as required under MCL 769.12(6). Defendant had actual notice of the prosecution's intent to seek an enhanced sentence which afforded defendant an opportunity to respond to the habitual offender notification. The charging documents in the lower court file all apprised defendant of his fourth-offense habitual offender status and that he faced a mandatory minimum 25-year sentence if found guilty of murder or the lesser included offenses. See *People v Heard*, 323 Mich App 526, 544-546; 917 NW2d 752 (2018).

Defendant's contention that the notice must be deemed defective because it listed more than three prior felony convictions and featured two felony convictions of the same date lacks merit because the notice is required to identify the required number of prior felonies and does not restrict the prosecution from listing more, but merely prohibits the trial court's reliance on more than one conviction that arose out of the same criminal transaction. Even striking one of defendant's listed 2005 prior felony convictions does not leave the prosecution's notice wanting because the other convictions satisfy the statutory requirement. Accordingly, defendant's argument fails as a matter of law.

Defendant's argument for applying the rule of lenity also lacks merit. In *People v Johnson*, 302 Mich App 450, 462; 838 NW2d 889 (2013) (quotation marks and citations omitted), this Court explained:

> The "rule of lenity" provides that courts should mitigate punishment when the punishment in a criminal statute is unclear. The rule of lenity applies only if the statute is ambiguous or in absence of any firm indication of legislative intent.

MCL 769.12 lacks any ambiguity and the Legislature's intent is clear. The statute's plain language requires the imposition of a 25-year minimum sentence and sets forth what the prosecution must establish to seek the enhancement of a sentence where a person has been convicted of a combination of three or more felonies. Listing more than three prior felonies does not deprive the prosecution of its right to seek the enhancement of a defendant's sentence following conviction of a listed serious crime against a person. Defendant had adequate notice of the prosecution's intent and the trial court properly applied MCL 769.12 when sentencing defendant.

Defendant also asserts that defense counsel provided him ineffective assistance by not objecting during his sentencing. Defendant, however, offers no argument or explanation in this regard. This Court has explained that, "where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (citation omitted). Moreover, "failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."

*People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010) (citation omitted). Defendant is not entitled to resentencing.

## F. REASONABLENESS OF MANDATORY MINIMUM SENTENCE

Defendant argues that his mandatory minimum sentence of 25 years' imprisonment lacks reasonableness and proportionality to the offense and the offender because it is too severe and violates his due-process rights. Alternatively, defendant argues that his trial counsel provided ineffective assistance by not raising these sentencing issues during sentencing. We disagree.

This Court reviews de novo a trial court's statutory interpretation, and for an abuse of discretion its sentencing decisions. *Babcock*, 469 Mich at 253. This Court reviews a trial court's denial of a motion for resentencing for an abuse of discretion. *Puckett*, 178 Mich App at 227. An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *Schaw*, 288 Mich App at 236. "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 920 NW2d 327 (2017) (quotation marks omitted).

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *Armstrong*, 490 Mich at 289. Although defendant preserved the issue, where, as here, no evidentiary hearing has been held, this Court's review is limited to mistakes apparent on the trial court record. *Seals*, 285 Mich App at 17. However, "where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Yee*, 251 Mich App at 406.

"The United States Constitution prohibits cruel *and* unusual punishment. US Const, Am VIII. The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16." *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582 (2015). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted). A sentence that is proportionate does not constitute cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). "If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose sentence in accordance with that statute," and such a mandatory minimum sentence is not considered a guidelines "departure." MCL 769.34(2)(a). This Court has held that mandatory minimum sentences are presumptively proportionate and do not violate the principle of proportionality set forth in *Milbourn*. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991) (holding a ten-year mandatory minimum sentence proportionate). " 'In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Bowling*, 299 Mich App 552, 557-558; 830 N2d 800 (2013), quoting *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). Defendant has failed to meet this requirement.

In this case, defendant fails to identify or explain how his crime and criminal history render his sentence disproportionate. Defendant's PSIR reports that defendant had multiple prior felony convictions and his conviction of voluntary manslaughter constituted a serious crime of passion in which he shot and killed Love. Defendant's 25-year mandatory minimum sentence is proportionate to the offender and the seriousness of the offense. The record indicates that the trial court appropriately considered the offense and the offender to determine defendant's sentence. "Because defendant has not overcome the presumption of proportionality, and because a proportionate sentence is not cruel or unusual, defendant has not established a constitutional violation." *Powell*, 278 Mich App at 324.

Defendant also argues that defense counsel provided him ineffective assistance by not objecting during his sentencing on reasonableness and proportionality grounds. Defendant, however, offers no argument or explanation in this regard. Because defendant has failed to brief the merits of this allegation of error, the issue is deemed abandoned by this Court. *Yee*, 251 Mich App at 406. Moreover, "failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 205 (citation omitted). Defendant, therefore, is not entitled to resentencing.

## G. INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT COLLATERALLY ATTACKING TWO OF DEFENDANT'S PRIOR FELONY CONVICTIONS

Defendant argues that his counsel provided ineffective assistance by not collaterally attacking two prior felony convictions on the ground that they were invalid because his trial counsel in both cases provided him ineffective assistance. Defendant's argument lacks legal merit.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *Armstrong*, 490 Mich at 289. Although defendant preserved the issue, where, as here, no evidentiary hearing has been held, this Court's review is limited to mistakes apparent on the trial court record. *Seals*, 285 Mich App at 17.

In *People v Ingram*, 439 Mich 288, 300-302; 484 NW2d 241 (1992), a case in which the defendant collaterally attacked a prior guilty plea years after he made the plea in an effort to oppose being sentenced as a third-offense OUIL habitual offender, our Supreme Court reversed this Court's reversal of his conviction and explained:

> We are persuaded that in order to best achieve the legitimate goals of finality and the efficient and effective administration of justice, while also achieving the goals of *Boykin* and *Jaworski*, as well as the goals of all applicable plea-taking requirements and procedural safeguards in these cases, we must follow a policy which provides incentive for raising claims on direct review where proper relief can be afforded and error corrected. Such a policy, we find, would do the most to insure the achievement of proceedings that are consistent with the rudimentary demands of fair procedure. While this Court has not previously articulated this distinction between collateral attacks and direct appeals in the application and adoption of the requirements regarding plea-taking proceedings, such a distinction is now properly drawn, when for the first time the specific issue is directly before us. [Citations omitted.]

*Ingram* directs that defendant cannot collaterally attack prior guilty pleas on the ground that in his other cases his defense counsel provided ineffective assistance. Defendant had the obligation to challenge those cases in the trial courts and by direct appeals of his pleas and his defense counsels' performance in those cases. As a matter of law, defendant cannot collaterally attack his guilty plea convictions in his prior cases here, as a means to evade sentencing to the statutory mandatory minimum as a fourth-offenses habitual offender. See *Ingram*, 439 Mich at 294-295, 300-302; see also *People v Asquini*, 227 Mich App 702; 577 NW2d 142 (1998).

Defendant's claim that his trial counsel in this case provided ineffective assistance by not collaterally attacking his prior convictions lacks merit. Failure to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 205.

Michigan law does not permit a defendant to seek resentencing in a later case by challenging his sentences imposed for two prior felonies in earlier cases that he now claims were invalid because his defense counsel in those cases provided ineffective assistance. Such challenge is an improper collateral attack of the two prior convictions. Accordingly, defendant is not entitled to resentencing in this case.

## H. IMPROPER AMENDMENT OF INFORMATION OR INEFFECTIVE ASSISTANCE

Defendant argues that the trial court erred by permitting the prosecution to file an amended felony information that gave notice that the prosecution intended to seek an enhanced penalty if convicted of felony-firearm in this case. Alternatively, defendant asserts that his trial counsel provided ineffective assistance by failing to object during defendant's sentencing. We disagree.

The trial court did not abuse its discretion by permitting the prosecution to amend the felony information to provide defendant a felony-firearm second offense notice because MCL 767.76 and MCR 6.112(H) authorize trial courts to do so before, during, or after trial, and defendant does not nor can he dispute that he had a prior felony-firearm conviction making him subject to an enhanced sentence under MCL 750.227b for his felony-firearm conviction in this case. MCL 767.76 provides in relevant part as follows:

> No . . . conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made.

\* \* \*

No action of the court in refusing a continuance or postponement under this section shall be reviewable except after motion to and refusal by the trial court to grant a new trial therefor and no writ of error or other appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the reviewing court shall find that the accused was prejudiced in his defense or that a failure of justice resulted.

MCR 6.112(H) similarly in relevant part provides:

The court before, during, or after trial may permit the prosecutor to amend the information or the notice of intent to seek enhanced sentence unless the proposed amendment would unfairly surprise or prejudice the defendant.

In this case, the prosecution filed the amended information on July 30, 2019, giving defendant felony-firearm second offense notice indicating that the prosecution intended to seek imposition of an enhanced sentence upon his conviction of felony-firearm in this case. Defendant's trial commenced in October 2019 and at no time before, during, or after trial, did defendant object to the felony-firearm second offense notice. Defendant could not reasonably object to the notice because he did not, nor could he, contest that he had a prior felony-firearm conviction.

In *People v Eason*, 435 Mich 228, 232; 458 NW2d 17 (1990), our Supreme Court clarified that the "sentence enhancement provision is a legislative authorization for judges to tailor punishment to the criminal on the basis of an objective factor, i.e., a prior conviction under the same statute." In *People v Williams*, 215 Mich App 234, 234-236; 544 NW2d 480 (1996), this Court held that the defendant was not denied due process when charged and convicted of felony-firearm, MCL 750.227b, but sentenced as a second-time felony-firearm offender, MCL 750.227b(1). The trial court, therefore, did not abuse its discretion in this case by permitting the prosecution to amend the information to include the felony-firearm second offense notice. Defendant's claim of error fails as a matter of law.

Defendant's ineffective assistance of counsel claim also fails because defense counsel had no obligation to make a futile objection. Failure to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 205.

## I. VERDICT FORM

Defendant argues that the verdict form the trial court provided to the jury deprived defendant of his constitutional right to a jury trial by not giving the jury an opportunity to return a verdict of not guilty.

An issue with a jury verdict form is considered an error in jury instructions. *People v Garcia*, 448 Mich 442, 483-484; 531 NW2d 683 (1995). This Court reviews de novo claims of instructional error. *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009). Issues for appeal, however, must be preserved by an objection made in the record. *Carter*, 462 Mich at 214. Unpreserved claims of error may be reviewed for plain error. *Id.* "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* at 215 (quotation marks and citation omitted). A defendant

waives an error if he "affirmatively approve[s]" of an issue before the trial court, only to later argue that there was error on appeal. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 420; 884 NW2d 297 (2015). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's actions will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In this case, defendant did not object to the verdict form and in fact his counsel approved it and the jury instructions as given.

This Court, however, may review a defendant's unpreserved constitutional claims for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain error rule, defendant bears the burden to prove: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings. *Id.* at 763 (citation omitted). If defendant satisfies these three requirements, this Court "must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks, alteration, and citation omitted).

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *Armstrong*, 490 Mich at 289. This Court's review of unpreserved claims of ineffective assistance, however, is limited to errors apparent on the record. *Seals*, 285 Mich App at 19-20.

An issue with a jury verdict form is considered an error in jury instructions. *Garcia*, 448 Mich at 483-484. This Court reviews jury instructions in their entirety to determine if error requiring reversal occurred. *Aldrich*, 246 Mich App at 124. "The instructions must not be extracted piecemeal to establish error." *Id.* (quotation marks omitted). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Hawthorne*, 474 Mich 174, 182; 713 NW2d 724 (2006) (quotation marks and citation omitted). "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Aldrich*, 246 Mich App at 124. "Further, a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *Wade*, 283 Mich App at 467.

In *Wade*, this Court considered the defendant's claim that the jury verdict form deprived him of his constitutional right to trial by jury because the form stated:

POSSIBLE VERDICTS

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT.

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)

__ NOT GUILTY

__ GUILTY

OR

__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)

OR

__ GUILTY OF THE LESSER OFFENSE OF-INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.) [*Id*. at 465.]

Defense counsel had objected before the trial court gave the form to the jury on the ground:

that it did not comply with the standard jury form because the jury was not given the option of finding defendant generally not guilty or not guilty of the lesser-included offenses. The trial court disagreed. The next day, defense counsel again raised the issue, and the trial court again disagreed. [*Id*. at 464.]

The trial court instructed the jury in *Wade* on the use the form and later reinstructed the jury in an attempt to clarify the process the jury should follow respecting the defendant's first-degree premeditated murder charge. *Id*. at 465-466. After deliberating, the jury returned a verdict of guilty of involuntary manslaughter. *Id*. at 466. When asked by the court clerk regarding the jury's verdict, the record indicated that the jury had experienced some confusion regarding the use of the verdict form despite the trial court's instructions. *Id*. at 466-467. The defendant moved to set aside the verdict and also for judgment notwithstanding the verdict but the trial court denied the motion on the ground "that the verdict form in this case was 'self-explanatory' and provided the jury with the appropriate options." *Id*. at 467.

On appeal, the defendant argued that the trial court erred by presenting and permitting the jury to use an improper verdict form. This Court agreed and concluded that:

the verdict form was defective, requiring reversal, because it did not give the jury the opportunity to return a general verdict of not guilty. We note that the verdict form would not have been defective if it had included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter. Despite the trial court's efforts to clarify the verdict form with its instructions, because of the way the verdict form was set up, the jury was not given the opportunity to find defendant either generally not guilty or not guilty of the lesser-included offenses such that his constitutional right to a trial by jury was violated. Accordingly, we reverse defendant's conviction and remand this case for a new trial. [*Id*. at 468.]

In this case, preceding the trial court's instruction regarding the elements of the charged offenses, the elements of the lesser included offenses, and self-defense, the trial court instructed the jury as follows:

The Defendant is charged with six counts. That is with the crimes of homicide, murder first degree premeditated; motor vehicle, unlawfully driving

away; weapons firearms, possession by a felon; and three counts of weapons felony firearm.  These are separate crimes and the prosecutor is charging that the Defendant committed all of them.  You must consider each crime separately in light of all the evidence in the case.  You may find the Defendant guilty of all, or any one or any combination of these crimes, guilty of a less serious crime or not guilty.

* * *

I have prepared a verdict form listing the possible verdicts.  You'll see all six counts.  It's two pages.  There is a line for the foreperson to sign and date.

As to Count One, the murder first degree premeditated count you have four options: not guilty, guilty of murder first degree premeditated, guilty of the lesser offense second degree murder, guilty of the lesser offense manslaughter.

Are the attorneys satisfied with the reading of the instructions?

[Prosecution]:  People are satisfied, you Honor.

[Defense counsel]:  Satisfied on behalf of defense, Judge.

The trial court provided the jury the verdict form which stated the following options for Count One: Murder First Degree-Premeditated:

POSSIBLE VERDICTS:

You may return only one verdict on each count.  Mark only one box for each count.

### COUNT ONE: MURDER FIRST DEGREE-PREMEDITATED

☐      Not Guilty

**OR**

☐      Guilty of MURDER FIRST DEGREE – PREMEDITATED

**OR**

☐      Guilty of the Lesser Offense of: SECOND DEGREE MURDER

**OR**

☐      Guilty of the Lesser Offense of: MANSLAUGHTER

The record does not reflect that the jury had any questions about their instructions or the verdict form.

In a recent case similar to the case at bar, *People v Jones*, unpublished opinion of the Court of Appeals, issued January 27, 2022 (Docket No. 351881) (application for leave pending)[7] in which the defendant relied on *Wade* and claimed deprivation of his constitutional right to a jury trial because of the verdict form used, this Court analyzed the following verdict form which stated:

You may return only one verdict on each count.  Mark only one box for each count.

**Count One: Homicide – Murder First Degree – Premeditated**

☐ Not Guilty

☐ Guilty of Homicide – Murder First Degree – Premeditated

☐ Guilty of the lesser offense of Second Degree Murder

☐ Guilty of Voluntary Manslaughter [*Unpub op* at 3.]

This Court concluded:

Contrary to what defendant asserts, the verdict form specifically gave the jury the option to select a general "Not Guilty" verdict for the first-degree premeditated murder charge.  Similarly, the trial court instructed the jury that one of the available options for the first-degree premeditated murder charge was a verdict of "not guilty" and to "return only one verdict on each count."  Because the record clearly establishes that the jury was given the opportunity to return a general verdict of not guilty, defendant's unpreserved challenge to the jury verdict form is without merit and does not warrant relief.  [*Id*.]

In another similar case, *People v McNeal*, unpublished opinion of the Court of Appeals, issued June 17, 2021 (Docket No. 351900), lv den 508 Mich 969 (2021), this Court considered whether a verdict form similar to the case at bar had the defects described in *Wade* requiring reversal.  This Court explained:

Unlike the verdict form in *Wade*, the verdict form in this matter did not present the not-guilty option only with the most serious form of homicide.  The verdict form used in this matter provided:

You may return only one verdict on each charge.  Mark only one box in each section of this sheet.

COUNT ONE: FIRST DEGREE PREMEDITATED MURDER.

☐ Not Guilty.

---

[7] Unpublished opinions of the Court of Appeals are not binding upon this Court, but may be persuasive.  *People v Daniels*, 311 Mich App 257, 268 n 4; 847 NW2d 732 (2015).

☐ Guilty of First-Degree Premediated Murder.

☒ Guilty of the less serious crime of Second-Degree Murder.

☐ Guilty of the lesser included offense of Voluntary Manslaughter.

As can be seen above, the not-guilty option for the homicide charge in this case provides exactly what *Wade* demands, an option whereby this jury could have returned not guilty for the entire homicide charge. Therefore, defendant presents no error requiring reversal." [*Unpub op* at 2-3.]

In *People v Glenn*, unpublished opinion of the Court of Appeals, issued July 2, 2020 (Docket No. 341721), lv den 508 Mich 958 (2021), this Court considered whether the following verdict form contained defects as described in *Wade*. This Court's opinion provided a photocopy that depicted the verdict form which instructed the jurors:

(CHOOSE ONLY ONE)

Count 1          Criminal Sexual Conduct

___ Not Guilty

Or:

___ Guilty of Criminal Sexual Conduct in the First-Degree  . . . .

Or the lesser offense:

___ Guilty of Criminal Sexual Conduct in the Third-Degree . . . .  [*Unpub op* at 3.]

The verdict form went on to similarly state the options for Count 2 Criminal Sexual Conduct. *Id*. This Court distinguished the structure of the verdict form from that used in *Wade*. *Id*. This Court explained:

> In contrast, the form here first clearly gave the jury three options: (1) defendant was not guilty, (2) defendant was guilty of the listed offense, or (3) defendant was guilty of the lesser-included offense. The form clearly indicates that jurors are to "CHOOSE ONLY ONE" of these options. Looking at the form, no reasonable juror could believe that they did not have the option to return a general not guilty verdict, so defendant's argument otherwise is without merit. And because the argument is without merit, defense counsel cannot be found ineffective for not objecting to the verdict form. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). [*Unpub op* at 4.]

-28-

Notably, *Glenn* reveals that the use of the disjunctive word "or" in the verdict form did not render the verdict form defective. It also indicates that defense counsel did not provide ineffective assistance by not objecting to the verdict form.

Other recent cases have held that similar verdict forms are not defective. See *People v Jaber*, unpublished opinion of the Court of Appeals, issued March 11, 2021 (Docket No. 352092) (application for leave pending); *People v Pickens*, unpublished opinion of the Court of Appeals, issued September 24, 2020 (Docket No. 346072), in lieu of granting leave remanded for correction of the judgment of sentence on other grounds, 507 Mich 929 (2021).

Analysis of the jury instructions and the verdict form in this case reveals that the trial court properly instructed the jury to choose only one verdict option for each charged offense. Further, examination of the verdict form makes clear that, only after the jury rejected the option of a general not guilty verdict, it proceeded to determine whether defendant was guilty of first-degree premeditated murder, or guilty of the lesser offense of second-degree murder, or guilty of the lesser offense of manslaughter. It is well established that jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The record reflects that the trial court provided the jury the option to enter a general not guilty verdict. The jury could have returned not guilty for the entire homicide charge. Accordingly, the trial court did not err.

Moreover, had trial counsel raised an objection to the jury verdict form, such objection would have been futile, given that the jury verdict form did not violate defendant's right to have the jury presented with the opportunity to return a general verdict of not guilty. Defense counsel had no obligation to raise a futile objection or argue a meritless legal position. *Ericksen*, 288 Mich App at 201. Therefore, defense counsel was not ineffective for failing to object to the jury verdict form.

## J. INEFFECTIVE ASSISTANCE RELATED TO MANDATORY SENTENCE

Defendant argues that defense counsel provided ineffective assistance by failing to adequately explain that the fourth-offense habitual offender notice would apply if the jury found defendant guilty of any other lesser offense. We disagree.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *Armstrong*, 490 Mich at 289. Because defendant did not preserve this claim of error, this Court's review is limited to errors apparent on the record. *Seals*, 285 Mich App at 19-20.

To prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citations omitted). "In addition to proving that defense counsel's representation was constitutionally deficient, defendant must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 55-56 (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Carbin*, 463 Mich at 600 (quotation marks and citation omitted). Defendant must overcome a strong presumption that trial counsel provided effective

assistance. *Seals*, 285 Mich App at 17. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich App at 716 (citation omitted).

A defendant has the right to consult with his attorney at critical stages in criminal proceedings. See generally, *Hieu Van Hoang*, 328 Mich App at 59. In *Frazier*, 478 Mich at 246, our Supreme Court noted that the United States Supreme Court "stated that when an attorney consults with his client about the consequences of his client's decision, the attorney's performance can be considered deficient under the first prong of *Strickland* only if the attorney fails to follow his client's express instructions."

In his motion for a new trial, defendant conceded that the prosecution served defendant a fourth-offense habitual offender notice that set forth the mandatory minimum sentence the trial court would impose upon defendant if convicted of another felony in this case. The record reflects that the complaint, the original felony information, and the amended felony information, all provided defendant notice of the potential for the imposition of the 25-year mandatory minimum under MCL 769.12 if convicted of a felony in this case.

Defendant asserts that his trial counsel and the court failed to inform him adequately regarding the mandatory minimum but does not elaborate as to what more they should have done to inform him. Nor does defendant explain how, under the circumstances of his criminal history and the serious offense committed, he did not understand the consequences if convicted of another felony in this case. No mistakes are apparent in this record.

Even if this Court concludes that defense counsel performed below an objective standard of reasonableness by not explaining that a conviction of the lesser offense of manslaughter would result in imposition of the 25-year mandatory minimum sentence, defendant, nevertheless, must establish that, but for defense counsel's defective performance, "there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 55-56 (quotation marks and citations omitted). He has failed and cannot do so. Accordingly, defendant is not entitled to relief.

Defendant has failed to establish that his trial counsel provided ineffective assistance. There are no errors apparent in the record. Moreover, even if defendant's trial counsel's performance fell below an objective standard of reasonableness, defendant has failed and cannot establish that, but for his counsel's performance, there is a reasonable probability that the outcome would have been different. Defendant, therefore, is not entitled to any relief.

Affirmed as to convictions and sentence.

/s/ David H. Sawyer
/s/ Douglas B. Shapiro
/s/ James Robert Redford

-30-